IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 3:17-cr-223-WKW |
| ) | |
| WORLDLY DIEAGO HOLSTICK, ) | |
| LEANNE GRIMMETT, ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Worldly Dieago Holstick ("Holstick") and Leanne Grimmett ("Grimmett") – collectively referred to as "Defendants" – filed motions to suppress information gathered through search of the residence at 533 Lee Road 57, Lot 52, Auburn, Lee County, Alabama which is located at the Orchard Way Trailer Park. (Docs. 338, 366). The Government timely filed its response in opposition. (Doc. 356). The Court held an evidentiary hearing on the motions on February 28, 2018. Based on the evidence presented to the Court, arguments of the parties, and for the reasons set forth herein, the Magistrate Judge recommends that the motions to suppress (Docs. 338, 366) be **DENIED**.

I. FACTUAL BACKGROUND

Defendant Holstick timely filed his motion to suppress the fruits of the search of the trailer at Lot 52. *See* Doc. 338. Defendant Holstick has standing due to his status as a resident. Defendant Holstick argues the officers lacked probable cause and no exigent circumstances existed which authorized entry into the residence. The Government filed its response on February 2, 2018. *See* Doc. 356. In its response, the Government asserts that the warrantless entry was justified by exigent circumstances. Subsequently, Defendant Grimmitt filed her

motion to suppress adopting and joining Defendant Holstick as the co-tenant of the same premises.

The facts are virtually not in dispute.  On September 16, 2016, around 9:50 p.m., Auburn police received a 911 call that a juvenile was shot at the Orchard Way Trailer Park.  Detective Terry White ("Detective White") who was then a Patrol Officer with Auburn Police Department, was one of the officers responding to the shooting.  As Detective White traveled along Highway 14 to get to the trailer park, he saw other two other officers stopped on the side of the road with civilians who were in their car.  The other officers were also responding to the shooting, but had been flagged down en route by Kayla Hall, the mother of gunshot victim, D.H.  Detective White got out of his car and remained briefly with the Officers.  He saw D.H. had a gunshot wound in the chest which he sustained while in the car with Hall and Defendant Timothy Spinks.  The trio were on the way to Hall's brother's residence in Orchard Way when the car was shot.  The first responding officers were assessing him in the back seat of the car.  D.H. was ultimately airlifted to Birmingham due to his wound.  Detective White left the roadside because the other officers did not need his assistance with D.H.  Within a few minutes, Detective White and other officers entered the Orchard Way trailer park to find the exact location of the shooting.  Witnesses standing outside an adjacent trailer told the officers the shooting happened near lot 52 and pointed at the trailer on the lot.  The officers did not question the witnesses extensively at the time. Detective White and the other officers could see bullet holes down the side of the trailer at lot 52.  They also saw a black sedan parked on the property with a shattered passenger-side window and bullet strike on the roof.  Additionally, officers found a number of shell casings nearby.  Detective White and two other officers went to the front of the residence.

Prior to entry, the officers announced their presence, and asked if anyone was inside the

residence. When there was no response, Detective White and the other officers entered to determine whether there were any victims inside the residence. The sweep of the trailer took a few minutes. The officers found no additional victims but smelled marijuana and saw drug paraphernalia. Once they determined no additional people were inside, they backed out of the residence and roped it off as a crime scene. On cross examination, Detective White said that the officers did not know whether any person was inside prior to conducting the sweep of the trailer and no witnesses outside the trailer said whether anyone was inside the trailer. There were also no noises, moans, screams, or cries coming from inside the mobile home. Once inside, the officers went in each room to look for victims which would include looking in closets, the shower, and any other place a person might be found. They did not open any drawers or conduct a full search of the premises. After they roped off the premises as a crime scene, Defendant Grimmett came to the trailer. Throughout the testimony, defense counsel utilized a drawing of the trailer location which was admitted as Defendant's Exhibit 1. The only factual dispute is that Officer White testified he found the door to the trailer was partially open while Defendants claim the door was closed.

Agent Kendall also testified as to the contraband ultimately found at the residence including items consistent with the manufacturing of cocaine and/or crack, firearms, and a DVR system that operated the cameras outside the residence which contained video of the actual shooting. In particular the DVR contained video evidence of criminal activities by the defendants. On cross examination, Agent Kendall testified that the footage on the video after the shooting appeared to show the trailer's occupants during the shooting shut the door when they fled the trailer. Agent Kendall also testified that the video is motion activated and will jump as motion is detected. Therefore, he could not testify whether the door was 100 percent closed

when they left or if it was partially open. Ultimately, the Court considered a proffer by Defense counsel as to what was viewed on the video. The Court credits the testimony of White, but assumes arguendo and for purposes of analysis that the door was closed.

Finally, the hearing revealed that the officers ultimately sought and received a search warrant for the premises after the shooting. The Warrant, its supporting documentation, and return was entered as Government Exhibit 1. The Affidavit discuses that officers also detected the odor of green marijuana and saw plastic bags commonly used to package marijuana. The Search warrant was granted by Judge Bush by telephone at 11:49 p.m. on September 16, 2016 and signed in person on September 19, 2016. The search results were detailed on the return which was signed on September 23, 2016. The return lists several items indicative of drug distribution.

## II. LAW GENERALLY

### A.  Fourth Amendment  Warrantless Searches

Holstick and Grimmett seek suppression under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Warrantless searches and seizures are per se unreasonable unless an exception applies. *Arizona v. Gant*, 129 S. Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967)). However, a warrantless search is allowed where both probable cause and exigent circumstances exist. *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000) (quoting *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991)). The exception applies when the exigencies of the situation "make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Riley v.*

*California*, --- U.S. ---, ---, 134 S. Ct. 2473, 2494, 189 L. Ed. 2d 430 (2014) (quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865).  Such exigencies may include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury.  *Id*.

**B.     Standing**

It is well established that for a defendant to move to suppress evidence, he must have standing.  *United States v. Eyster*, 948 F.2d 1196, 1208-09 (11th Cir. 1991).  Fourth Amendment rights are personal, and only individuals who actually enjoy the reasonable expectation of privacy may challenge the validity of a government search.  *Rakas v. Illinois*, 439 U.S. 128, 133-34, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).  Thus, the defendant must have a legitimate expectation of privacy in the premises.  *See United States v. Epps*, 613 F.3d 1093, 1097 (11th Cir. 2010) ("Only individuals who have a legitimate expectation of privacy in the area invaded may invoke the protections of the Fourth Amendment.").  An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008); *see also United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006) (must establish both a subjective and an objective expectation of privacy).  Courts assess on a case-by-case basis the standing of a particular person to challenge an intrusion by government officials into an area over which that person lacked primary control.  *Oliver v. United States*, 466 U.S. 170, 191 n. 13, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).  Moreover, the Eleventh Circuit has held that where a defendant is neither the owner nor the lessee of the place searched, in order to contest a search, he must "demonstrate a significant and current interest in

the property at the time it was searched." *United States v. Miller*, 387 F. App'x 949, 951 (11th Cir. 2010).

### III. DISCUSSION AND ANALYSIS

The Government does not contest Holstick and Grimmett have standing to seek suppression of the evidence found during the search of the trailer. As such, the Court takes the motions at face value that both were residents of the trailer. Therefore, they both have standing in this matter. Next, the Court finds that the initial warrantless entry into the trailer was reasonable under the Fourth Amendment. Specifically, both probable cause and exigent circumstances existed.

**A.   Exigent Circumstances**

First, the Court will address the "emergency aid" exception as it relates to exigent circumstances.

The Supreme Court has recognized on numerous occasions that one exigency obviating the warrant requirement is the need to assist persons who are seriously injured or threatened with such injury. *Birchfield v. North Dakota*, --- U.S. ---, ---, 136 S. Ct. 2160, 2170, 195 L. Ed. 2d 560 (2016); *Riley*, --- U.S. at ---, 134 S. Ct. at 2494; *King*, 563 U.S. at 460, 131 S. Ct. at 1856; *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006); *see also Georgia v. Randolph,* 547 U.S. 103, 118, 126 S. Ct. 1515, 1525, 164 L. Ed. 2d 208 (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur"). "In order for the emergency aid exception to apply, officers must have an objectively reasonable belief that someone inside is seriously injured or threated with such injury and is in need of immediate aid." *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (quotations

and citation omitted).  "The officer's subjective motivation is irrelevant." *Brigham City*, 547 U.S. at 404, 126 S. Ct. at 1948.  The Government bears the burden of demonstrating the exception applies and Court's inquiry is fact intensive.

When looking to the facts where prior courts have held the emergency aid, they generally have in common "the indicia of an urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior."  *Timmann*, 741 F.3d at 1179. Defendants argues that upon arrival to the scene, no witnesses said anyone was inside nor did the officers hear noises, moaning, screaming, or crying coming from inside the mobile home. However, this narrow-view approach advocated by the Defendants is too restrictive.  The lack of audible cries does nothing to negate the Court's conclusion that it was objectively reasonable for the officers to enter the trailer to search for potential victims.  In the case at hand, the officers responded to an emergency 911-call reporting a drive-by shooting at the Orchard Way Trailer Park.  On their way to the trailer park, officers found a child shot in the chest from the same drive-by shooting.  Inside the trailer park, witnesses pointed to the trailer parked in lot 52 as the scene of the shooting.  Officers could see obvious bullet holes in the side of the trailer and the vehicle parked on the premises.  "[T]he possibility of a gunshot victim lying prostrate in the dwelling created an exigency necessitating immediate search."  *United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir. 2002).  This was certainly the case in the situation before the officers.

Defendants assert the situation here is more analogous to the one in *Timmann* and that there were no emergent circumstances.  In *Timmann*, the Eleventh Circuit found that there was no urgent, ongoing emergency.  The officers did not receive an emergency call, but rather a service call regarding what appeared to be a bullet hole made at least 39 hours prior to when the

officers made entry. *Timmann*, 741 F.3d at 1180. There were no circumstances of a tumultuous scene, no violent behavior, or any other indicators of recent violence. Considering the totality of the circumstances, the Eleventh Circuit found it was not reasonable for the officers to believe that someone inside the apartment was in danger or in need of immediate aid. However, the case here is far more analogous to *Holloway* where there was the distinct possibility that a gunshot victim (or victims) may be lying unconscious and prostrate inside the trailer. The recent shooting of the child, the 911-call, the witness statements pointing to the trailer, and the obvious bullet holes in the trailer justified the objective reasonableness of conducting a safety sweep of the premises. The question is one based on the information available to the officers at the time, not viewed from the lens of hindsight. Seeking a warrant could have resulted in delay for immediate medical attention for a victim with a recent gunshot wound. The Court finds that the officers reasonably believed an emergency situation justified a warrantless search of the trailer for victims of gunfire. Further, whether the door was open or closed is insignificant to the legal analysis. Even if closed, the officers acted in a reasonable manner when they opened the door to enter the premises.

Next, evidence that is visible in plain view during a permissible warrantless search may be seized and used as a basis for a search warrant. *United States v. Williams* 871 F.3d 1197, 1202(11th Cir. 2017); *see also United States v. Ratcliff*, --- F. App'x ---, 2018 U.S. App. LEXIS 5443, *22, 2018 WL 1081208, *8 (11th Cir. Feb. 28, 2018) (unpublished opinion citing *Williams* and stating same). The officers clearly saw the security cameras outside and inside the trailer, the DVR recording device/monitors, and the drug paraphernalia. Additionally, after entry, the officers smelled the strong odor of green marijuana. From the totality of the circumstances, the officers had good reason to secure the premises as a crime scene and in order to preserve

evidence of both the drive-by shooting and the likely drug-related activities.

**B.     Probable Cause**

Discharging a firearm into a dwelling or vehicle is a felony in violation of Ala. Code § 13A-11-61.  Specifically, Alabama law states:

> (a)  No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state.
>
> (b)  Any person who commits an act prohibited by subsection (a) with respect to an occupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft shall be deemed guilty of a Class B felony as defined by the state criminal code, and upon conviction, shall be punished as prescribed by law.
>
> (c)  Any person who commits any act prohibited by subsection (a) hereof with respect to an unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft shall be deemed guilty of a Class C felony as defined by the state criminal code, and upon conviction, shall be punished as prescribed by law.

Ala. Code § 13A-11-61.  Thus, the firing into the trailer (whether occupied or not) and Hall's vehicle (clearly occupied) both constituted felonies under Alabama law.  Law enforcement officers were certainly authorized to investigate and search for evidence of the two crimes.  They already had a child (D.H.) with a gunshot wound to the chest and other members of the trailer park who had been placed in peril.  Therefore, based on the totality of the circumstances, clear probable cause existed for them to enter the trailer in search of evidence.

Additionally, in the supporting affidavit, it is clear the officers disclosed to Judge Bush that they "made entry to check welfare and see if any gunshot victims were inside and needed medical care."  As such, they properly disclosed to the judge the circumstances of the original entry which was impliedly approved by Judge Bush when he granted the warrant.  Further, even if the Court excluded what the officers saw in plain view when making its determination,

sufficient probable cause existed to obtain a search warrant for the trailer. Specifically, given the bullet holes on the outside of the trailer and vehicle and given the witness statements that the shooting occurred there, there was probable cause for a warrant to search for evidence related to the shootings – both for additional victims and evidence relating to the shooting.

C.     **Reasonableness / Leon Good Faith**

Lastly and in the alternative, even if the probable cause finding by Judge Bush was in error, the *Leon* good faith exception to the Exclusionary Rule would apply. *See United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* good faith exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Robinson*, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citing *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002)); *see also United States v. Mathis*, 767 F.3d 1264, 1276-77 (11th Cir. 2014) (reiterating principles of *Leon*). There are only four situations where the good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient- i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

*Martin*, 397 F.3d at 1313 (citing *Leon*, 468 U.S. at 923, 104 S. Ct. 3405). None of these four situations are present.

The purpose of the exclusionary rule is to act as "a deterrent to willful conduct that violates individual rights." *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988).

Here, officers acted appropriately in conducting the initial safety sweep. Further, they went the extra step in obtaining a warrant to search and seize the items inside the trailer, even though the circumstances permitted them to do so without a warrant. This is precisely how society wants law enforcement to act. Consequently, the reliance on the search warrant was appropriate and accordingly, the good faith exception precludes suppression of the evidence.

## IV. CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge as follows:

(1) Defendant Worldly Dieago Holstick's *Motion to Suppress Evidence Found in search of Residence at 533 Lee Road 57* (Doc. 338) be **DENIED**.

(2) Defendant Leanne Grimmett's *Motion to Suppress* (Doc. 366) be **DENIED**.

It is further **ORDERED** that the parties file any objections to this Recommendation on or before **March 26, 2018.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 12th day of March, 2018.

                                        /s/Terry F. Moorer  
                                        TERRY F. MOORER  
                                        UNITED STATES MAGISTRATE JUDGE