IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:17-CR-223-WKW |
| | ) | [WO] |
| WORLDLY DIEAGO HOLSTICK | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Before the court are (1) the motion to suppress filed by Worldly Dieago

Holstick (Doc. # 338); (2) the Government's response (Doc. # 356); (3) the

Magistrate Judge's recommendation (Doc. # 429), as amended (Doc. # 522);

(4) Holstick's objections to the recommendations filed by Holstick's former counsel

(Doc. # 456) and current counsel (Doc. # 627); and (5) the Government's response

to Holstick's objections (Doc. # 645). The Magistrate Judge held two hearings on

the motion to suppress[1] (Docs. # 344, # 529) and recommends that the motion be

denied.

The court has conducted a *de novo* review of those portions of the

recommendation to which Holstick objects. *See* 28 U.S.C. § 636(b). It has read the

---

[1] After the initial hearing and recommendation, Holstick's former counsel filed an objection (Doc. # 456), which prompted the Magistrate Judge to reopen the suppression hearing to view the home video surveillance recording seized from the searched premises. Thereafter, the Magistrate Judge entered the amended recommendation. (Doc. # 522.)

transcripts of the evidentiary hearings, watched the seized home surveillance video, examined the exhibits, and fully considered Holstick's objections. Having done so, the court finds that the objections are due to be overruled and the recommendations adopted.

## II. DISCUSSION

Holstick lodges multiple objections to the Magistrate Judge's recommendations. These objections, all but one of which was raised by Holstick's newly retained counsel, employ mostly new arguments for the suppression of evidence seized from the mobile home. Holstick's prior counsel focused principally on whether exigent circumstances justified the initial warrantless entry into the mobile home. The theory advanced was that, because the officers' initial entry into the mobile home was unlawful, the protective sweep and the subsequent search warrant (which relied on the officers' observations during the initial entry) were unconstitutional and that, therefore, all of the evidence seized from the mobile home was inadmissible as fruit of the poisonous illegal entry.

Changing the focus, Holstick now challenges (1) the officers' observations (including smells) after the initial entry and protective sweep; (2) the state court's determination that probable cause existed to support the issuance of a search warrant; (3) the scope of the search warrant; (4) the officers' good faith in procuring the search warrant; and (5) the reliability of the seized home surveillance video. The

difficulty here is that, because most of the issues Holstick raises are new, they were not fully developed at the suppression hearings or squarely before the Magistrate Judge. However, because the Government has had an opportunity to respond to the objections, the court will address them in the interest of judicial efficiency. The court presumes the parties' familiarity with the facts and, thus, refers to them only as necessary for the analysis. Some of the objections are more colorable than others, but ultimately the objections do not necessitate rejection of the Magistrate Judge's recommendations.

## A. Whether the emergency-aid exception justified serial, warrantless entries into the mobile home

The emergency-aid exception to the Fourth Amendment's warrant requirement permits law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

Holstick does not object to the Magistrate Judge's finding that "[t]he recent shooting of the child, the 911-call, the witness statements pointing to the trailer, and the obvious bullet holes in the trailer justified the objective reasonableness of conducting a safety sweep of the premises." (Doc. # 522, at 15); (Doc. # 627, at 11 (Holstick's Objs.) (acknowledging that the officers' warrantless entry into the home was reasonable under the exigent-circumstances exception to the warrant

requirement).)  The court concurs as well that the emergency-aid exception to the Fourth Amendment's warrant requirement permitted the officers to enter the mobile home without a warrant for the purpose of conducting a limited protective sweep to look for potential victims of the drive-by shooting.

Holstick's new argument, however, is that a finding of exigency does not end the analysis, but rather is the starting point.  Hence, his objections highlight events occurring after the initial warrantless entry into the mobile home.

To begin, Holstick contends that "[e]xigent circumstances no longer existed after the first entry into the trailer" and, that, therefore, the second sweep of the mobile home was unlawful.  (Doc. # 456, at 2.)  In the amended recommendation, the Magistrate Judge acknowledges that there was a second warrantless entry into the mobile home shortly after the first.  He opines that the purpose of the second entry was for a supervisory officer, who was not present during the initial entry and protective sweep, to confirm the officers' findings.  (Doc. # 522, at 4.)  The amended recommendation, thus, impliedly countenances the second warrantless entry as constitutional.

Fortuitously, last month, the Eleventh Circuit addressed the issue of law enforcement officers' serial, warrantless entries into a home.  *See Montanez v. Carvajal*, 889 F.3d 1202 (11th Cir. 2018).  It held that, because the exigent-circumstances doctrine supported the initial warrantless entry into the home, "[t]he

officers could thereafter enter and re-enter the residence to observe the contraband without separately violating the Fourth Amendment," so long as the officers "confine[d] their intrusion to the scope of the original invasion." [2] *Id.* (citations and internal quotation marks omitted). Here, Holstick does not argue or point to evidence that the scope of the sweep on reentry exceeded the scope of the initial sweep. The holding in *Montanez* is timely for purposes of this case and disposes of Holstick's objection.

**B.      Whether there was probable cause for a search warrant for controlled substances based upon the officers' smelling marijuana and observing plastic bags inside the mobile home**

The search warrant authorized the officers to search for marijuana and controlled substances, as well as for drug paraphernalia. That part of the warrant is supported by the attestations in the search-warrant affidavit that, after entering the mobile home to conduct the protective sweep for victims, the officers detected "the strong odor of green marijuana and saw plastic bags commonly used to package marijuana." (Doc. # 409, at 5, at 3.) Holstick argues that probable cause to search for drugs was lacking because there was no credible evidence that the officers in fact smelled marijuana and saw plastic bags in plain view.

---

[2] The pinpoint cite from the Federal Reporter Third Edition is not available as of this date.

Generally, a court reviewing the issuance of a search warrant does not conduct a *de novo* probable cause determination but merely decides "whether the evidence viewed as a whole provided a 'substantial basis' for the [state court judge's] finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732–33 (1984) (per curiam) (alterations added); *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." (alterations omitted). Suppression of evidence is only required where the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975). Even in those hard cases where the affidavit's demonstration of probable cause presents a close call, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Upton*, 466 U.S. at 734 (citation and internal quotation marks omitted).

1.    The *officers' detection of an odor of marijuana after entering the mobile home*

The Magistrate Judge deemed it unnecessary to rule on whether the officers' smelling marijuana when they entered the mobile home supplied a substantial basis for the state court judge to find probable cause to issue a search warrant for drugs. (*See* Doc. # 429, at 9 ("[E]ven if the Court excluded what the officers saw in plain

view when making its determination, . . . there was probable cause for a warrant to search for evidence related to the shootings — both for additional victims and evidence relating to the shooting[s].").)  However, given Holstick's new arguments, the court will address this issue.

The Eleventh Circuit recognizes a plain-smell corollary to the plain view doctrine.[3]  In the *en banc* decision of *United States v. Tobin*, 923 F.2d 1506 (11th Cir. 1991), the Eleventh Circuit held a law enforcement officer's "suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana." *Id.* at 1512.  And, in *United States v. Lueck*, 678 F.2d 895 (11th Cir. 1982), the court concluded that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *Id.* at 903; *see also United States v. Sentovich*, 677 F.2d 834, 838 n.8 (11th Cir. 1982) (DEA agent's "detection of an odor of marijuana was sufficient alone for a finding of probable cause" for a warrant to search the luggage from which the odor emanated).  It logically follows from these decisions that the recognizable smell of marijuana gives rise to probable cause supporting a search warrant.  Indeed, Holstick recognizes that "[t]here is no doubt that the smell of

---

[3] It is long settled that "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978); *see also Harris v. United States*, 390 U.S. 234, 236 (1968) (per curiam) (Observations of "objects falling into the plain view of an officer who has a right to be in the position to have that view . . . may be introduced in evidence.").

marijuana by a trained police officer is probable cause for issuance of a search warrant." (Doc. # 627, at 17 (citing *Lueck*, 678 F.2d at 895).)

Here, to reiterate, the officers were lawfully inside the mobile home to conduct a protective sweep to look for potential victims. Hence, the issue is whether the officers' smelling marijuana while inside the mobile home — a fact recited in the affidavit submitted in support of the search warrant — provided a "substantial basis" for the state court judge to find probable cause for a warrant to search for drugs in the mobile home. *Upton*, 466 U.S. at 732–33.

The state court judge issued the search warrant based upon an application and the affidavit of Corporal Michael Creighton, a detective with the Auburn Police Department. (Doc. # 409-5, at 2–3; Doc. # 529, at 53.) Corporal Creighton arrived on the scene after the responding officers made the initial warrantless entry into the mobile home. (Doc. # 529, at 53.) The affidavit recites in detail the information law enforcement officers received about the drive-by shooting at the mobile home on September 16, 2016, and what the officers observed on their way to and upon their arrival at the mobile home. (Doc. # 409-5, at 2.) Also, the affidavit explains what the officers smelled after they entered the mobile home to conduct a protective sweep to look for potential victims of the drive-by shooting: The "[o]fficers detected the strong odor of green marijuana." (Doc. # 409-5, at 3.) There is nothing ambiguous about this sworn statement.

Circuit precedent supports the conclusion that the officers' smelling marijuana upon lawfully entering the mobile home supplied probable cause for the warrant to search for drugs inside that home. *See Tobin*, 923 F.3d at 1512; *Lueck*, 678 F.2d at 903. Here, the court finds that, based upon Corporal Creighton's attestation in the search-warrant affidavit that the officers detected the strong odor of green marijuana when they entered the mobile home, the state court judge had a substantial basis to find probable cause to issue the search warrant for drugs.

However, Holstick challenges whether the officers really did smell marijuana. Pointing to the testimony at the suppression hearings, Holstick argues that there was "[n]o credible evidence . . . that an officer smelled marijuana." (Doc. # 627, at 17.) But this argument is flawed for at least three reasons.

First, Holstick's argument relies on the dearth of evidence at the suppression hearings about the officers' smelling marijuana when they entered the mobile home. But the paucity of evidence is predictable since Defendants, in their motions to suppress, argued that the initial warrantless entry was illegal and, for that reason, the evidence seized pursuant to the search warrant must be suppressed. It is not surprising then that, at the first suppression hearing, neither counsel for the Government nor counsel for Holstick (or any defense counsel for that matter) asked Officer Terry White about the odor of green marijuana wafting inside the mobile home. (*See* Doc. # 344, at 3–46 (Officer White's testimony).) Such questions were

not front and center to the defense's main argument. And being asked no questions, Officer White naturally gave no answers on this issue. Additionally, Holstick's current counsel, who represented Holstick at the April 12, 2018 suppression hearing, did not try to remedy the dearth as he did not ask the testifying officer any questions about the officers' smelling marijuana when they entered the mobile home to conduct the protective sweep. On this record, the absence of evidence does not equal the falsity of evidence.

Second, Holstick's challenge to the absence of evidence before Judge Moorer at the suppression hearings is misdirected. Whether the state court judge had a substantial basis for finding probable cause for a search warrant for drugs necessarily depends upon the facts known to the state court judge. *See Gates*, 462 U.S. at 238–39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." (alterations omitted)); *see also United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) ("This circuit has stated that probable cause exists '*if facts within the magistrate's knowledge* . . . would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." (emphasis added) (citation and internal quotation marks omitted).

Third, to the extent that Holstick belatedly argues a violation of *Franks v. Delaware*, 438 U.S. 154 (1978), namely, that the state-court search warrant was

based on a false attestation that officers detected the odor of marijuana when they entered the mobile home, his cursory argument does not satisfy the preliminary showing required for an evidentiary hearing. *See United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1345 (N.D. Ga. 2009) ("In *Franks*, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search." (citing *Franks*, 438 U.S. at 171–72)); *see also infra* Part II.D.

For these reasons, Holstick's objection challenging whether the officers smelled marijuana when they lawfully entered the mobile home is due to be overruled.

### 2. *The Officers' discovery of plastic bags in the mobile home*

Holstick also argues that the only drug paraphernalia (including the plastic bags) the officers could have observed during the protective sweep of the mobile home was inside a closed black case. More specifically, Holstick contends that the home surveillance video depicts that an officer intentionally kicked open the lid on the black case, which was on the floor. Hence, Holstick objects to the Magistrate Judge recommendations on grounds that "[t]here is nothing in the record that shows

that there was incriminating evidence in plain view." (Doc. # 522, at 10–11.) Holstick's argument is factually and legally deficient.

First, the suppression hearings before the Magistrate Judge yielded little evidence about the officers' observations of drug paraphernalia during the protective sweep of the mobile home. But this is not startling because again the officers' post-entry observations were not the focus of Defendants' motions to suppress. Issues about whether the black case was closed or partially open when the officers initially entered the mobile home and whether an officer accidentally or intentionally knocked open the case during the protective sweep were not raised by any of the Defendants, either in their motions to suppress or at the suppression hearings and, thus, escaped scrutiny. Understandably then, the Magistrate Judge did not examine whether these issues had an impact on the validity of the state-court search warrant.

Second, even if it is assumed that the officers discovered the plastic bags unlawfully, the statement in the search-warrant affidavit that the officers smelled marijuana when they lawfully entered the mobile home provides sufficient additional information to independently justify a finding of probable cause. *See United States v. Bush*, 727 F.3d 1308, 1316–17 (11th Cir. 2013) (discussing the independent source doctrine). And nothing in the record reveals that Corporal Creighton would not have sought a search warrant for drugs without the information about the discovery of plastic bags in the mobile home. *See id.* Hence, even if there

was a Fourth Amendment violation as to the discovery of the plastic bags, it appears that the independent source doctrine would permit the admission of evidence found during the search of the mobile home.

Accordingly, Holstick's objection challenging the veracity of the statement that the officers observed plastic bags inside the mobile home is due to be overruled.

## C.     Whether the warrant was facially invalid as overbroad

"A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000).  Holstick argues that the search warrant is overbroad because the circumstances of the drive-by shooting did not justify the seizure of "all digital information from cameras *inside* the home."  (Doc. # 627, at 20.)  He contends that the warrant lacked particularity because it was not limited to the seizure of digital recordings of the outside of the mobile home and, relatedly, that surveillance video of the inside of the mobile home was not "reasonably related to the object of the investigation."  (Doc. # 627, at 21.)

Because Holstick challenges the search warrant as overbroad for the first time in his objections to the recommendations, the Magistrate Judge did not directly address this issue.  But the Magistrate Judge did find that there was probable cause for the officers to obtain a search warrant "for evidence related to the shootings — both for additional victims and evidence relating to the shooting[s]."  (Doc. # 522,

at 12.)  And this court finds that the warrant's authorization of the seizure of any "DVR recording device and monitor" of the inside of the mobile home does not render the warrant overbroad.  (Doc. # 409-5, at 4.)

Contrary to Holstick's argument, the fact that the officers found no victims or occupants in the mobile home during the protective sweep was not conclusive of whether people were inside the mobile home earlier "at the time of the shooting." (Doc. # 627, at 20.)   Additionally, evidence pertaining to the mobile home's occupancy at the time of the shooting was material to whether there was probable cause to believe that the felony offense of attempted murder had been committed. *See* Ala. Code § 13A-6-2; (Doc. # 409-5, at 4.)  Such evidence also had the potential of demonstrating whether there was probable cause to believe that a Class B felony or a Class C felony had been committed for discharging a firearm into a dwelling. *See* Ala. Code § 13-11-61(b), (c) (classifying the felony of discharging a firearm into a dwelling as either Class B or Class C depending on whether the dwelling was occupied or not); (Doc. # 522, at 11 (finding that there was probable cause for officers to search the mobile home for evidence of the offenses enumerated in § 13-11-61 of the Alabama Code).)  No doubt, the home surveillance video of the inside of the mobile home had the potential to show whether the mobile home was occupied at the time of the shooting and, thus, whether there was probable cause to believe that the crimes of attempted murder or discharging a firearm into an occupied

dwelling had occurred. (Doc. # 529, at 60 (overruling objection to the admissibility of the home surveillance video of the inside the mobile home because it showed that the mobile home "was indeed occupied" when the drive-by shooting occurred).) Accordingly, Holstick's objection to the state-court search warrant on grounds that it is overbroad is due to be overruled.

**D.      Whether the good-faith exception announced in _United States v. Leon_, 468 U.S. 897 (1984), applies to the search warrant**

"Generally, the Fourth Amendment excludes from a criminal prosecution evidence that has been seized as a result of an illegal search." _United States v. Floyd_, 247 F. App'x 161, 164 (11th Cir. 2007) (citing _United States v. Martin_, 297 F.3d 1308, 1312 (11th Cir. 2002)). However, in _United States v. Leon_, 468 U.S. 897 (1984), the United States Supreme Court carved out a good-faith exception to the exclusionary rule, holding "that the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." _Davis v. United States_, 564 U.S. 229, 238–39 (2011) (citing _Leon_, 468 U.S. at 922). The good-faith exception applies in all but certain narrow circumstances, including: "(1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" and (2) "where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable." *Martin*, 297 F.3d at 1313 (citation and internal quotation marks omitted).

Holstick contends that the Magistrate Judge erred in finding that suppression of the evidence seized from the mobile home would be unwarranted based upon *Leon*'s good-faith exception to the exclusionary rule. (Doc. # 522, at 12–13.) According to Holstick, the good-faith exception does not apply because Corporal Creighton's statement in the warrant affidavit that the officers "saw plastic bags commonly used to package marijuana" (Doc. # 409-5, at 3) "was based on the officers' kicking over a closed container and thereafter claiming that the alleged contraband in the container was in 'plain view'" (Doc. # 627, at 24). Holstick does not discuss the narrow circumstances that the Eleventh Circuit articulated in *Martin*, but his argument implies that the search warrant is based on a false statement or an insinuation that the plastic bags were in plain view when they, in fact, were not. The argument raises the issue of whether the allegedly false statement (or omission) in the affidavit negates the availability of the *Leon* good-faith exception under the first circumstance above. This inquiry is closely intertwined with the analysis of *Franks v. Delaware*. *See Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), in holding that "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless

disregard of the truth"); *United States v. King*, No. 3:14-CR-147-MHT, 2015 WL 4620530, at *5 (M.D. Ala. June 30, 2015) (observing that the inquiry under *Leon* as to whether the affiant misled the judge who issued the warrant by providing information the affiant knew was false is the same as the inquiry under *Franks v. Delaware*). But Holstick cannot show a *Franks v. Delaware* violation. *See Lebowitz*, 647 F. Supp. 2d at 1345 (setting forth the requirements for establishing a *Franks v. Delaware* violation).

First, he has not shown that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit . . . ." *Id.* (citing *Franks*, 438 U.S. at 171–72). There is not a lot of evidence about Corporal Creighton's role during the search of the mobile home, but this much the record shows: At the April 18, 2018 suppression hearing, Holstick's counsel (Mr. Katz) elicited testimony that Corporal Creighton was not one of the officers who made the initial entry into the mobile home. Rather, he arrived on the scene after the responding officers "notified [him] of what was going on." (Doc. # 529, at 53.) Hence, even if it is assumed that the statement in the affidavit that officers "saw plastic bags" was misleading as to whether the plastic bags were in plain view, Holstick has not shown that Corporal Creighton (the affiant) knew that the information was false or that he included the statement in the affidavit with reckless disregard of its truth. *See, e.g., United States v. Railey*, 481 F. App'x 545, 548 (11th

Cir. 2012) (holding that, although the affiant "negligently included" an incorrect assumption in the search warrant affidavit, the defendant had not shown that the affiant "inserted her assumption with knowledge or in reckless disregard for the truth").

Second, Holstick has not demonstrated that "the allegedly false statement was necessary to the finding of probable cause." *Lebowitz*, 647 F. Supp. 2d at 1345 (citing *Franks*, 438 U.S. at 171–72)). As discussed earlier, the redaction of the statement about the officers' observations of plastic bags would not defeat the affidavit's demonstration of probable cause. The statement about the plastic bags, therefore, is immaterial to the finding of probable cause. Accordingly, there is no basis under *Franks*, for not applying the *Leon* good-faith exception to the exclusionary rule.

Furthermore, to the extent that Holstick challenges the probable-cause determination as to the search for drugs, the search warrant, on its face, is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Martin*, 297 F.3d at 1313 (citation and internal quotation marks omitted). Hence, the court finds that the officers reasonably relied in good faith on the search warrant in searching for drugs.

However, citing *United States v. McGough*, 412 F.3d 1232, 1239–40 (11th Cir. 2005), Holstick argues that the *Leon* good-faith exception does not apply

because the search-warrant affidavit relies on evidence of plastic bags discovered in violation of the plain-view doctrine. But *McGough* is distinguishable. In *McGough*, the Eleventh Circuit rejected application of the *Leon* good-faith exception because the officers' illegal warrantless entry into the home resulted in and tainted the discovery of all of the evidence that was used to obtain the search warrant. Here, to the contrary, the officers' warrantless entry into the mobile home to look for possible victims of the drive-by shooting did not offend the Fourth Amendment's warrant requirement; hence, unlike in *McGough*, the law enforcement officers' presence in the mobile home was lawful. Additionally, as discussed, that portion of the warrant authorizing a search for drugs can be upheld even without consideration of the supporting affidavit's statement that the officers saw plastic bags of the sort commonly used to package marijuana. Therefore, even assuming that the evidence of the plastic bags was tainted by an illegal discovery, other evidence (*i.e.*, the officers' smelling marijuana) was not.

In sum, the court finds that the Magistrate Judge correctly concluded that *Leon*'s good-faith exception to the exclusionary rule would apply even if the search warrant was found to be deficient. Holstick's objection to the Magistrate Judge's application of *Leon*'s good-faith rule is due to be overruled.

**E.    Whether there has been an alteration to the home surveillance video recording**

In the amended recommendation, the Magistrate Judge noted that Agent Kendall "testified that the video is motion activated and will jump as motion is detected." (Doc. # 522, at 4.)  In his objections, Holstick argues that he purchased the video surveillance system at issue and that the cameras "are not motion detected cameras." (Doc. # 627, at 25.)  He "requests that the Court examine the video itself and either exclude the video or grant leave for Holstick to have an expert examine the video for alterations." (Doc. # 627, at 25.)

Holstick has provided neither admissible evidence nor authority for his argument, which he raises for the first time in his objections.  Statements in briefs are not evidence.  Absent evidence and any convincing argument to the contrary, the court finds that Holstick's challenge goes to the weight the jury should assign the video surveillance recording, and not to its admissibility.  *See United States v. Deverso*, 518 F.3d 1250, 1256 (11th Cir. 2008) ("[T]o the extent that Deverso challenges the reliability of the information contained in the birth certificate, such as Beverly's date of birth and the lack of signature of the attendant at birth, that challenge goes to the weight of the evidence, not its admissibility on grounds of authenticity.").  Accordingly, this objection lacks merits.

### III.  CONCLUSION

Based upon a *de novo* review of the record, it is ORDERED as follows:

(1)     The recommendation (Doc. # 429), as amended (Doc. # 522), is ADOPTED; and

(2)     The motion to suppress filed by Worldly Dieago Holstick (Doc. # 338) is DENIED.

DONE this 4th day of June, 2018.

/s/ W. Keith Watkins<br>CHIEF UNITED STATES DISTRICT JUDGE